SAMUEL, Judge.
Plaintiff filed this suit for $6,727.95 for alleged breach of a landscaping contract with the defendant. Defendant answered, denying liability, and filed a reconventional demand for $10,634.21 for various back charges, attorney’s fees, and expenses to complete the work called for by the contract. Subsequently, the reconventional demand was amended and increased by an additional $5,170.
After a trial on the merits, judgment was rendered in favor of plaintiff and against defendant in the sum of $6,727.95. The judgment dismissed defendant’s reconven-tional demand. Defendant has appealed.
Defendant is the owner-developer of seventy-four condominium units in New Orleans known as Chimney Wood Townhomes. Plaintiff contracted with defendant on November 7, 1975 to furnish all labor, material, supervision, and engineering necessary to provide complete landscaping of the units in accordance with plans and specifications dated September 16, 1975 and prepared by defendant’s landscape architect, James F. Fondren & Associates. The original contract price was $39,450, and that amount was increased first to $40,090.59, and then to $40,915.59.
In addition to performing the landscaping services mentioned above, Paragraph 1.14 of the landscape specifications provided as follows:
*65 “The contractor shall be responsible during the contract period for keeping all planting and work incidental thereto in good condition by replanting, plant replacements, resodding, watering, weeding, cultivating, pruning and spraying, and by performing all other necessary operations of care for promotion of root growth and plant life so all work is in a satisfactory condition at provisional acceptance.”
Thus, the contract provided that all maintenance was to be performed by plaintiff until provisional acceptance by the owner-developer and its landscape architect, and it further contained a one year guarantee by plaintiff of the viability of the plants and bushes planted by it, which one year period commenced on the date of provisional acceptance. The questions as to the existence and date of provisional acceptance is a key question in resolving the present dispute.
Thomas Bethune, III, a landscape architect with the Fondren firm had primary responsibility for the Chimney Wood project. On May 10, 1976, in the presence of Glenn Harris and on Fondren’s letterhead addressed to Adrian Kornman, a principal of Coast Quality Construction Company, the parent of Chimney Wood, Inc., Bethune prepared a letter of provisional acceptance. Bethune signed the name “Jim” (i. e., James Fondren) to the letter of provisional acceptance and gave a copy of it to Harris.
Bethune admitted at the trial he did not have authority to sign Fondren’s name, nor had he ever taken such action previously. He also admitted he did not send a copy of the letter to Kornman. Harris likewise admitted being present when Bethune signed Fondren’s name to the letter. Finally, Fon-dren insists Bethune had no authority whatever to sign his name and that, upon being informed by Bethune of the letter, he personally inspected the project and rescinded the provisional acceptance.
In order to resolve the problem, Harris, Kornman, Fondren and Bethune held a meeting on May 21, 1976. At this meeting an agreement was reached and reduced to writing by which Harris agreed to complete all work in accordance with plans, specifications, and punch lists of plants which were either dead or dying, with the exception of approved substitutions and exceptions, no later than June 7, 1976. The approved exceptions and substitutions related to plants that either could not be delivered by June 7, or which had to wait until a later date because of the heat of the summer.
Harris continued work on the project, but limited his performance to planting in accordance with a punch list prepared by Bethune on May 6, 1976. He did no more maintenance work in the form of watering, pruning, grass cutting, or spraying after May 6, 1976. Bethune prepared another planting punch list on June 8, 1976 listing approximately 126 plants which were either missing, dead, not acceptable, improperly planted, damaged, or undersized.[1]
On June 9, 1976, Fondren sent a letter to Harris asserting that Harris was still responsible for maintenance procedures under the agreement of May 21, 1976 until the project was accepted, and that Harris was to request a project inspection upon completion of his work.
A provisional acceptance was approved by Fondren and Chimney Wood for certain areas of the project, and Harris was notified on August 4, 1976 that he was in default with regard to other areas designated on the plans and specifications as Areas 1, 3, 4, 6, and 8 of the project. Harris did not perform, and on August 6,1976 defendant entered into a contract with another landscape contractor to complete Harris’ work for the sum of $4,345.58.
Approximately one year later, on July 25, 1977, Bethune prepared a list of all plants in need of replacement following the one year guarantee. The cost of these plants was $8,035, of which $2,254.75 was imputed *66 to Harris’ guarantee of plants originally installed.
In holding for plaintiff, the trial judge found that Bethune was acting on behalf of Fondren and also had authority from Chimney Wood, Inc. to execute the provisional acceptance of May 10, 1976. We disagree with this conclusion.
The record is clear that Bethune did not have the authority to prepare the letter of provisional acceptance and execute it in Fondren’s absence. As stated above, Bethune admitted under oath he lacked such authority, Fondren likewise denied Bethune’s authority, and Glenn Harris readily admitted Bethune signed Fondren’s name to the letter in his presence. The only fact in the record which could even tend to support a finding that Bethune had authority to execute the provisional acceptance is the fact that he had general supervision of the project and that Fondren was employed on a full-time basis by Tulane University and visited the premises of the Chimney Wood Townhomes only once or twice a month. However, the mere delegation of authority by Fondren to Bethune to supervise the installation of plants does not, under the facts contained in the record, support an inference that Bethune had authority from Fondren to execute the provisional acceptance.
Furthermore, the subcontract between the parties which designates Chimney Wood as owner and contractor provides that “[ajcceptance of all work shall be subject to approval by the contractor and James F. Fondren, Landscape Architect ...” (Emphasis ours) and the landscape specifications state that provisional acceptance requires approval by owner and architect. Even if the record supported the conclusion that Bethune had the architect’s authority to act as his agent, nothing supports the conclusion that he was authorized to act as Chimney Wood’s agent. The document itself does not purport to contain an approval by Chimney Wood since the only name on that letter is Fondren’s.
In view of the clear and uncontradicted testimony of both parties to the litigation, which supports a conclusion that the provisional acceptance was executed without authority, and in view of the lack of direct conflicting evidence, we hold the trial judge committed error by finding Bethune was acting within his authority on behalf of Fondren and on behalf of Chimney Wood, Inc.
It follows that plaintiff abandoned the job prior to completion and prior to provisional acceptance. As a result, defendant had to contract with another landscape contractor to complete the job. The contract between plaintiff and defendant states plaintiff is obligated to replace, without cost to the owner and as soon as weather conditions permit, all dead plants and all plants not in a thriving condition, as determined by the owner’s landscape architect at the end of the guarantee. Glenn Harris admitted this one year guarantee was binding on his firm.
Evidence offered by defendant in support of its reconventional demand was testimony by James Fondren as to the cost of plants purchased in order to complete the punch list prepared by Bethune on July 25, 1977 in order to complete the project. Since it is impossible to determine the precise date of plaintiff’s abandonment of the job, we cannot say July 25,1977 is the exact date on which plaintiff’s warranty ended. However, that date is sufficiently close to the end of the one year warranty period following effective acceptance in July or August, 1976 and the time when plaintiff estimated he abandoned the job so as to be reasonable and enforceable by defendant. In connection with his punch list, Fondren testified the plants and other material necessary for completion were purchased from another landscape firm and that $2,254 in value of plants were attributed to those planted by plaintiff which did not survive the one year guarantee of his contract. This amount should have been awarded defendant on its reconventional demand.
Likewise, Bethune prepared a punch list on June 22, 1976 showing a considerable *67 number of plants then dead, dying, in shock, or otherwise unacceptable. These plants were installed by Harris, and under the contract should have been replaced by his firm. Bethune testified these plants had to be replaced by another landscape contractor, and that the cost of replacement was $4,345.58. Fondren also testified as to the accuracy of this figure, asserting his firm made a plant-by-plant review in order to determine the cost.
In addition, defendant met its burden of proving a charge of $2,673.69 for back charges for expenses incurred for maintenance of the areas in question, for weeding, watering, grass cutting, and some other services between May and August, 1976. Defendant asserts it incurred this expense because plaintiff abandoned the job with no valid provisional acceptance. Defendant’s employee, Tortorich, testified they paid an outside contractor $1,400 to perform maintenance at the beginning of the period starting in May and used their own personnel later. Defendant’s manager Kornman testified they experienced maintenance costs of $800 per month during the summer and $500 otherwise. This testimony was unrebutted and was ample support for defendant’s invoice for $2,763.69.
Finally, the subcontract between the parties provided for attorney’s fees to be awarded to defendant in the event of default by plaintiff. There is no basis for the trial court’s award of attorney’s fees to plaintiff, and, conversely, defendant is entitled under the contract to such fees which we set at $2,000.
Thus, we find plaintiff is entitled to an award of $6,727.95. We also find defendant, as plaintiff in reconvention, is entitled to $2,254.75 for replacement, etc. under the one year guarantee, $4,245.58 for completion of the work, and $2,673.69 for maintenance, a total of $9,274.02. We award defendant the difference between $9,274.02 and $6,727.95, or $2,546.07. In addition, we award defendant $2,000 as attorney’s fees.
For the reasons assigned, the judgment appealed from is affirmed in part, reversed in part, amended in part, and recast so as to read as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of defendant and plaintiff in reconvention, Chimney Wood, Inc., and against plaintiff and defendant in reconvention, Glenn Harris And Associates, Inc., in the full sum of $2,546.07, together with legal interest thereon from judicial demand until paid, and in addition, in the full sum of $2,000 as attorney’s fees.”
All costs in both courts are to be paid by the plaintiff and defendant in reconvention, Glenn Harris And Associates, Inc.

AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND RECAST.

. The same punch list identifies 23 plants which were damaged by third persons for which plaintiff was not responsible.